[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant moves to find the plaintiff, Cyril W. Green, Sr., in contempt for violation of the terms of a temporary injunction issued by the court, Bishop, J., on August 30, 2002, and modified by the court,Sferrazza, J., on January 28, 2002. The defendant also requests a restraining order preventing the sale or encumbrance of equipment and supplies.
In the underlying action, the plaintiffs, Cyril W. Green, Sr., and his son, Myron W. Green, sue Karen W. Green individually and as administratrix for the estate of Cyril W. Green, Jr., another son of Cyril, Sr. The plaintiffs claim that Cyril, Sr., intended to transfer to Cyril, Jr., a contiguous parcel of land comprising ninety acres. They further claim that the attorney who drafted the deeds pursuant to that intent mistakenly conveyed to Cyril, Jr., 177 acres of the father's land. On February 21, 2001, Cyril, Jr., married the defendant. On March 25, 2001, Cyril, Jr., died and his widow was appointed administratrix of his estate. Cyril, Sr., seeks reformation or rescission of the deeds, injunctive relief, and money damages for wrongful ejectment and trespass.
In June 2001, the plaintiffs filed an application for a temporary injunction. After an evidentiary hearing, Judge Bishop issued orders which contained, inter alia, the following provisions:
 1. Cyril, Sr., was entitled to farm the land in dispute, except that he was enjoined from disturbing the defendant's quiet use and enjoyment of the property.
 2. He was barred from the "red house" and from using the sawmill and the slaughterhouse.
3. No party was to sell or encumber the property.
On February 27, 2002, the defendant filed this motion for contempt CT Page 4998 claiming that Cyril, Sr., has repeatedly violated the temporary injunction orders by interfering with her use and occupancy through verbal harassment, the installation of different locks on certain gates and doors, the removal of a fuse box and water pump, and the removing and disposition of farm inventory and equipment.
On April 22, 2002, the court held an evidentiary hearing on the motion for contempt and the request for a restraining order. The court finds the following facts.
On or about January 25, 2002, Cyril, Sr., his son, Myron, and his brother, Newt Green, arrived at a structure located behind the red house, in which the defendant and her children reside, which structure is known as the "red barn, " despite its present gray color. The threesome entered the red barn and after a while exited. Within that barn were affixed an electrical fuse panel and water pump. The electrical panel regulated the supply of electric power to the red barn and three other buildings, including the slaughterhouse.
On the heels of their departure, Cyril W. Green III, stepson of the defendant, entered the red barn to investigate why Cyril, Sr., and the others had spent time inside the barn, which contained nothing that would ordinarily be of use to them. Cyril III noticed that the electrical panel box had been opened.
The next day, the defendant discovered that electric power was unavailable at the slaughterhouse where she had three freezers loaded with meat. This development prompted further investigation, which led to the discovery that the main fuses had been removed from the panel box in the red barn. To avoid loss of the frozen meat, the defendant arranged for electric power to reach the slaughterhouse by another route.
Also, a water pump, which was functional, had been removed from the red barn.
The court concludes that the defendant has proven, by clear and convincing evidence, that Cyril, Sr., had been ordered by the court to refrain from interfering with the defendant's use and enjoyment of the property, including the red barn and the slaughterhouse; that on January 25, 2002, Cyril, Sr., wilfully violated that order by removing or directing the removal of the main electrical fuses from the panel box in the red barn; and that this violation disrupted the defendant's use and enjoyment of the property and caused her inconvenience and expense. Consequently, the court holds that Cyril W. Green, Sr., is in contempt.
The court arrives at dissimilar conclusions with respect to the CT Page 4999 defendant's other claims of contemptuous behavior. The defendant has failed to meet the burden of proving that verbal harassment occurred or was in violation of the temporary injunction. Furthermore, free speech considerations may be implicated. Before a determination of civil contempt may be made, the movant must demonstrate that there exists a clear court order proscribing the conduct under scrutiny. An examination of the temporary injunction reveals no bar regarding communication between Cyril, Sr., and the defendant or her family.
Also, the court cannot conclude that the installation of different locks substantially interfered with the defendant's use of the property nor was done for malicious or other improper reason. Finally, the court's reading of the temporary injunction discloses no clear order preventing Cyril, Sr., from the removing, disposing or encumbering of farm equipment or other personalty. The temporary injunction does prohibit "transfers or encumbrances on the property by anyone claiming an interest in the property, " which language the court construes to pertain to real property.
Where the contemptuous conduct concerns a dispute between private litigants, a motion for contempt attempts to vindicate or enforce rights accorded to the parties by the court, and the enforcement proceeding is a civil contempt. The remedy for a civil contempt is nonpunitive and instead must be coercive or remedial. Practice Book § 1-21A. To that end, the court orders Cyril W. Green, Sr., to pay to the defendant, through counsel, the expenses she reasonably incurred to restore electric power to those areas disturbed by the removal of the fuses from the panel in the red barn. This sum is to be paid within thirty days of submission of the bills through counsel unless a hearing as to amount is necessary to resolve a dispute regarding the same.
Also, under G.S. § 52-256b, the court orders the plaintiff to pay reasonable attorney fee attendant to this motion for contempt upon hearing and proof regarding such fees.
Even where the court fails to find a contempt, the court has broad discretion to design orders to make an injured party whole and to avoid future conflicts. Clement v. Clement, 34 Conn. App. 641, 647 (1994). Accordingly, the court also orders Cyril W. Green, Sr., to provide, at the defendant's expense, functional keys for the locks of all gates on the disputed property. The court orders counsel for each party to accompany the parties to test the keys so provided at each gate to ensure their functionality. The time for such testing of the keys is set for Saturday, May 11, 2002 at 10:00 a.m, unless the parties and counsel mutually agree to another time or to forego the testing. CT Page 5000
Additionally, the court grants the defendant's request for a restraining order to the extent that no party may sell, transfer or encumber any farm equipment used in the farming operation without obtaining a court order approving the sale, transfer or encumbrance beforehand or unless by mutual, written agreement.
 /s/ SFERRAZZA ___________________, J.